Case 13-6348 Illinois Central Railroad Company v. TN Dept of Revenue et al. Oral argument, 15 minutes per side. Mr. Watts for the appellants. Four minutes please. Farewell. Good morning, ladies and gentlemen. Talmadge Watts for the Tennessee Attorney General's office and the Tennessee Department of Revenue. May it please the court. This is not a challenge to attacks targeted at railroads. It is an exemption-based challenge. In CXX Transportation v. Alabama Dept of Revenue, the United States Supreme Court considered whether a railroad could challenge as discriminatory within the meaning of subsection B-4 of the 4R Act, a sales and use tax imposed on its purchase or use of diesel fuel solely on grounds that its competitors, motor carriers and water carriers, were exempt from the sales and use tax on the same activity. The Supreme Court said yes, you can. Such a challenge is cognizable under subsection B-4. But the court quickly laid down ground rules for analyzing exemption-based challenges under subsection B-4, adding that its holding did not turn railroads into most favored taxpayers entitled to any exemption or other tax break the state gave to another entity. The court explained that whether a railroad can prove discrimination depends upon whether a state offers sufficient justification for declining to provide the exemption at issue to the railroad. The Supreme Court emphasized that district courts have a duty to confront what they characterized as naughty or difficult problems that sometimes arise when deciding whether dissimilar treatment is adequately justified. The necessary and inescapable implication from that language is that there can in fact be adequate justification for dissimilar treatment when the railroad's challenge is based upon an exemption from the tax that applies to the railroads. In other words, the mere existence of an exemption will not carry the day. Trial courts, like the district court below, err when they find discrimination based solely on the existence of an exemption. The district court below, relying on a lengthy quote from the Eleventh Circuit opinion arising from the Supreme Court's CSX decision on remand, relied primarily on the language of that case that says, we look only to the sales and use tax with respect to fuel to see if discrimination has occurred. The district court below said that railroads in Tennessee pay the sales and use tax on fuel purchases. Motor carriers do not, thus placing railroads at an overall disadvantage in violation of subsection B-4. The district court ruling, like that of the Eleventh Circuit, is that the mere existence of an exemption for a competitor from a tax that is imposed on the railroad is sufficient to sustain a discrimination challenge. Well, the railroads in the year in question, the railroads were paying more on their fuel, right, per gallon? No, sir. They were not? On one year, when fuel prices spiked in 2008, that's one year out of 69 years since the inception of the motor fuel tax. How do we look at this as discriminatory? We look at all the years, the last 10 years or since you put this tax on them, or do we just look at one year and say it was discriminatory that year? I think you can look at all the years for the purposes of deciding this case. However, the real question is, who has the higher tax burden on exactly the same activity? The motor fuel tax was first enacted in 1941. Trucks have been paying that since 1941. The sales tax was enacted in 1947. Trucks were exempted from sales tax on fuel because they were already paying the motor fuel tax. Railroads didn't need an exemption because they weren't paying the motor fuel tax. But in every year since 1941 through 2010, trucks have paid more tax per gallon than railroads have paid. The prices did spike in 2008 and they reduced drastically in 2009. Yes, ma'am? Presumably the state's argument encompasses a justification more than it's just one year. And I want to ask you about that. What does the state say about the justification for the differentiation, excepting the fact that there's a year of greater burden on the railroads? What would you say about that? Is the position we don't have to justify it because it's only one year? Or is the position we have to justify it and here's our justification? Part of the justification of what I just said, the exemption was granted to the motor carriers because they were already paying the motor fuel tax. Later, with congressional approval and virtual mandate, all 48 contiguous states and the contiguous Canadian provinces became members of the International Fuel Tax Agreement. That leads where I want to go because I cannot tell from looking at the district court opinion or from your briefs, the district court talks about this agreement and then never tells me what difference it makes. So one would think that maybe the district court just really didn't discuss one of the state's justifications. However, when I get to your brief, I don't find much more about why it matters. So explain to me how that agreement constrains the state's taxing arrangement. I assume that's the position. That along with the rate because it's really the burden. But the IFTA agreement makes it virtually impossible to tax the two modalities in exactly the same way. Why couldn't they do that? Why couldn't they just tax the fuel, whoever uses it? Under IFTA, trucks file their returns in a home jurisdiction and they pay tax at the pump when they fuel. But the information about their mileage goes through the IFTA clearinghouse and trucks wind up through a series of credits or refunds paying tax only on the fuel that they consume in the state. Why can't railroads do that too? Because there's no multi-state agreement and the state can't tax them the same way because the state can't charge use tax, which is a consumption tax, on fuel that the railroads buy in another state and pay sales tax on. You can't do that. Sales and use tax are two sides of the same coin. But if sales tax has been paid in one state and the property is brought into the other state, the second state can't charge use tax on it without violating the Commerce Clause. Now, there's a series, there are statutory arrangements in virtually every state that make it clear that when you have paid sales tax in one state and come into that state, into another state, you cannot be charged use tax. Technically, you can be charged on a differential, but that is if there is one. But that's so hard to enforce that it's hardly ever done except in the case of yachts and airplanes. Are you saying all the other states are doing it the same way Tennessee is? I believe so. There are three states out of 50 that impose both a sales tax and a motor fuel tax on motor carriers. Okay. But we can't do it exactly. The same way Alabama is doing it. Yes, sir. The states have a sales and use tax. If you can bring, sorry, if property is brought into a state on which sales tax has not been paid, the state imposes use tax. But if sales tax has been paid in another state, the state can't impose use tax without violating the Commerce Clause because it doesn't tax its own citizens for both the sales tax and the use tax. Okay. So in my understanding that the problem is two-fold. One is sort of a practicality argument relating to the lack of existence of an agreement, and another is the obstacles the state would face in terms of a potential or an actual Commerce Clause violation. Yes, we can't impose use tax on fuel that a train buys and pays sales tax on in another state. But to impose fuel, to impose our tax only on use tax, only a use tax on trains, if a train fueled in Memphis and went directly into Mississippi and burned all of its fuel in Mississippi, we would get virtually none of the revenues. Now with the trucks, that works out because when they drive into the state, they're charged the motor fuel tax on every gallon they consume. The reason I say that the real question, however, is the level of the tax burden is because the cases the 11th Circuit relied on were do not survive CSX. As the dissenting justice in the 11th Circuit pointed out, the 11th Circuit relied on Lowman and Union Pacific out of the 8th Circuit. They in turn relied on Trailer Train out of the 8th Circuit and McNamara out of the 5th Circuit. Trailer Train and McNamara are both perfectly good law and they both completely survived a Supreme Court case in CSX, but they were both dealing with instances in which a tax targeted railroads. Targeting analysis and exemption based analysis is not the same, certainly not after CSX. You can't look at the mere existence of an exemption. Also in Trailer Train and McNamara, if I could finish my sentence please, both used the commercial and industrial comparison class and both found the taxes discriminatory because they were targeting cases, which are virtually per se discriminatory. I know you're out of time, but I guess we don't have a test in our circuit to determine what constitutes discrimination here and would you concede that the taxes are at least facially discriminatory and then if you do or even if you don't, how are we going to decide what the formula should be if there is some differential, what should be the formula for deciding if there's justification for the discrepancy? First of all, I certainly do not concede that they are facially discriminatory. Second, like the Seventh Circuit did in Kohler and the general American case out of this circuit did, the district courts or the Court of Appeals adjusted the formula. Now those were more like property tax cases, but this district court entered an injunction declaring just the imposition of the tax to be discriminatory and the railroads are going into state courts seeking eight-figure refunds based on that injunction. What the district court could do very easily is simply lay down a rule of remedy that says the state will not charge railroads any higher tax per gallon than it charges trucks and with a series of credits and refunds, the state could very, very easily make sure that those two taxes are in parity and that the level of taxation on the railroads does not exceed the per gallon rate on the trucks. It's a very simple remedy. All right. Thank you. Good morning. May it please the Court. I'm James McBride with the Baker Donaldson firm. At the council table with me is Steve Goodwin, also of the Baker Donaldson firm. We represent the Illinois Central in this matter. Let me try to respond to one of the questions you had, Judge Givens, about this IFDA notion. That again is part of the problem in this case. If you don't have a bright line view about what justification really means, IFDA really points out that these two taxes that they want to compare are completely different taxes. They are totally different taxes. One is on trucks for highway use. The other is a general purpose sales tax on the railroads. And the courts have consistently said we're not going to look at other taxes to determine whether or not a facially discriminatory tax can pass muster. Well, why wouldn't we look at what the amount of the tax is instead of getting into the purpose of which the tax revenue is used? Why couldn't we do it that way? Because in all due respect, Judge Clay, if you're going to do a relative burdens balance, then you have to look at a whole lot of different things. You have to look at the use to which this tax is put. Yeah, but we don't have any say-so about how the state spends the money. Well, I understand you don't have any say-so, but the question of whether or not the sales tax is somehow or another compensated and justified by a completely different tax that has nothing to do with the sales tax, that is really the issue that you have to struggle with. Look, here's what happened in this case, and one of the reasons why I think there's this huge difference of opinion, there's a misapprehension by the state of Tennessee about what actually Lohman and its progeny are and what the Supreme Court said about that. Lohman and his progeny are not per se cases. We've never argued that they're per se cases. If you go back and look at McNamara, McNamara is one of the earliest cases out of the Fifth Circuit. McNamara says, look, if you have a facially discriminatory tax... I don't mean to interrupt. I know it's important for you to cover this, but I'm scratching my head over why we should label as facially discriminatory a tax that appears to impose the burden that would make it facially discriminatory in only one year between 1947 and the present. And Judge Gibbons, we don't say that at all. We say you don't look at what the dollar amount of the motor fuel tax is to determine whether it's discriminatory. Look, there is a long history, including the Sixth Circuit, of cases that say under the 4R Act, when you are looking at and determining whether or not there's discrimination, you focus on the tax at issue. What are we talking about if we're not talking about money? I mean, presumably the railroad is in this litigation because it thinks it's paying more money than it should have to and it's put at a competitive disadvantage against motor carriers. I mean, it is about money, so why wouldn't we look at money? Because what the trucks get for the motor fuel tax that they pay is they get all of their roadway built out for them. The railroads get none of that for the general purpose sales tax. And what the cases have held is if you're going to look at and determine whether it's discriminatory or not, look at the sales tax. And here's the analysis. Here's the analysis that actually comes out of Justice Kagan in footnote 8 and comes out of McNamara. Of course the state has the right to justify this tax, but what does that justification look like? First of all, the question is, is there a reason why the state cannot exempt the railroad from this tax since it's exempted the trucks? Is there a compelling reason why it cannot? And the answer to that is no, and we know the answer to that because as a practical matter, based on the proof in this case, in the 12 states in which Illinois Central operates, 10 of them exempt the railroad from the sales tax on its diesel fuel. So we know there's no compelling reason why the state can't exempt the railroad from this sales tax. So the other side of the coin is to say, well is there a compelling reason why the trucks couldn't be subject to both the sales tax and the motor fuel tax? And we know the answer to that. This sounds a little bit though like an invitation for the court to look at tax policy and figure out what we would have done in an ideal world. And not to be argumentative, but that is not correct. The answer is, what should the state of Tennessee do? I'm just saying it sounds a little bit like that when you start at it from that perspective as opposed to starting at it from the money perspective. Well, and the problem is, once we start at it from the money perspective, then go and look at pages 10 through 25 of their brief in which they talk about something called respective tax burdens, but it's really a burden analysis. And you have to get into a whole lot of issues if you do that. It's not strictly a question of money. The question is, what do the railroads get for the use tax that they pay compared to what do the trucks get for the motor fuel tax that they pay? You're saying the discrimination is on the use of the money? I'm saying the discrimination is on imposing a tax on us that you don't impose on our competitors. And there has to be a justification for doing that, and that justification isn't and never has been, and there's not a single case that suggests that. That justification is not, we're going to look at some other tax somewhere else and determine whether or not that tax might in fact justify this court, this court, the Sixth Circuit, and General American Transportation Company had occasion to look at that. That was a case in which Kentucky imposed a dollar per hundred tax rate on private car line property, and there was only a 45 cent per hundred tax rate on the property of other commercial industrial property. And this court used the language. It said, Kentucky attempts to justify that difference, the difference between a dollar rate and a 45 cent rate, by saying, let's look at some other taxes over here. Let's go look at the facts, Judge Gibbons, that there's real money involved because the other people, the other commercial industrial taxpayers, they pay city and county taxes, which come up to about 55 cents per hundred, and at the end of the day, everybody comes out equal. And what did this court do? This court said in a, it's in the General American case, in a Four R Act case, the court need not look at other taxes. It needs to focus on the individual tax that's allegedly discriminatory, and the court enjoined that tax and in fact did not look at and take those into account. That case is in a long history of cases, the McNamara case out of the Fifth Circuit, the City of Superior out of the Seventh Circuit, the Lohman case and the Union Pacific case out of the Eighth Circuit, the Eleventh Circuit case that just came out with CSX Alabama, all of which say the same thing. You might be able to justify those taxes, Mr. State, but you can't justify it by asking us to take a look at some other tax and figure out whether or not it might justify your exempting the competitor from these taxes. So at the end of the day, the analysis really is why can't the state simply treat the railroads and the trucks exactly the same and tax them under the use tax? So you'd say they could remedy it by just having a fuel taxes like they do on the trucks, right? Well, absolutely not, because again, the truck tax is a tax for highway use. That's why there's an IFTA agreement. That's why it only applies to people who are using the highways and it only is based on the consumption of the fuel. So technically, Tennessee could get some of this IFTA tax and never have a penny of that gas purchased in Tennessee just because the trucks use the roads. You wouldn't impose that kind of tax on the railroad. As a matter of fact, it's cited in the amicus brief. It's been long recognized that the fact that the trucks have these user charges that they pay, which provides their rights away, puts the railroads always at a competitive disadvantage. And for them to come in here and say, gosh, we want to also tell you you got to pay the sales tax because you pay the use tax, is really very difficult. But let me go back to the point because I think it's the crux of the argument here. And it took place in their reply brief. But the crux of the argument is that the state misapprehends both what Lohman and Union Pacific say because those are not per se cases. And it certainly misapprehends what the Supreme Court had to say about that. The Supreme Court from the granting of the petition for cert right through the decision in the case made very clear that the only issue it was going to look at and decide was the question of whether or not under B-4 with respect to non-property taxes. Or stated another way, whether the court's decision in ACF precluded exemption discrimination in all B-4 cases. And that's all the court looked at. And the court said we're not looking in any way to determine whether or not this is discriminatory or not. And quite frankly, in footnote eight, Justice Kagan pretty much says the same thing that the Fifth Circuit said. She says if there's a facially discriminatory tax, the state then has the burden of showing that there is some sufficient justification for why they don't grant that same exemption to the railroads. And what the case law, literally all of the case law has said in determining whether there is sufficient justification, you don't try to go out and look at whether or not there is some other tax or part of the taxing scheme that might save that tax. You have to look at and determine whether or not there's some compelling reason why the court can't grant that exemption or could not grant that exemption. The decision in the Eleventh Circuit and the decision below with Judge Sharpe is perfectly consonant with all, all of the cases on this. And I would only say I think this misapprehension on the part of the state about what, about how we interpret the Supreme Court decision in CSX has really colored their whole case. Because in support of their position that you ought to look at a relative burdens test, they don't cite any of the viable cases that are still there. They cite the cases that were abrogated by the Supreme Court. They even have the temerity to cite the Norfolk Southern case. They cite cases that were mooted by the Union Pacific case. They cite the dissents in the cases. So they ask this court to look at those cases which really, really are not viable anymore. Let me ask you this. If we see that there's a prima facie indication of discrimination, what would be the kind of justification for the differential in the taxes that we should take into consideration? What would be your position on that? Well, it's hard. And as the Supreme Court said, it's going to be tough because once the court starts out, once the state starts out and says it's going to have a facially discriminatory tax, it becomes difficult. But the court cited the RF&P case. And it's a very complicated case, but it was an income tax case involving Section 306 where there really truly was a difference between where the railroad had been and where its other competitors were or the other commercial industrial property were. It's also entirely possible that there might be a tax, as the Fifth Circuit said, that you might not be able to impose on the railroad, so you would have to impose a different kind of tax on the railroad. For example, it might be too difficult to impose a property tax on private car line companies so that a gross receipts tax might pass muster under certain circumstances. But those are the kind of things. We have a federal law that says you cannot burden interstate commerce by discriminatorily taxing the railroads. And what you have to do, if you're going to have a facially discriminatory tax, you have to really have some compelling reason why you have that, not just look at other taxes. Thank you. Thank you. Lowman and Union Pacific did not look at the offsetting motor fuel tax because they relied on trailer train and McNamara, and they did not perceive the distinction between the analysis that has to be used in a targeting case and in an exemption case. Lowman and Union Pacific were exemption-based challenges, and they didn't look at the motor fuel tax because in trailer train and McNamara, which were targeting cases, targeting cases which are per se discriminatory, the state asked those courts to evaluate overall tax burdens in regimes and schemes by looking at other taxes on other activities. That is not this case. The question in this case is very, very straightforward. How much money does the railroad have to pay the state, and how much money do the truckers have to pay the state in tax when they purchase or use a gallon of motor fuel? Same activity, same taxing authority. You do not look at how the proceeds are spent. That is getting into tax policy. And Atchison, Topeka, and Santa Fe versus Arizona flatly says that, and trailer train, which is the basis incorrectly relied on by Lowman, which is the case their whole position is built on, flatly says how a state spends its revenues has nothing to do with the issue of tax discrimination. And perhaps the best proof of that is the structure of the 4R Act. Subsections B-1, B-2, and B-3 deal with assessment ratios and tax rates. A railroad cannot state a claim, a property tax claim, under subsection 1, 2, or 3 by alleging that the state spends every penny of the money it gets from railroads in property taxes and devotes it to highway construction. That will not state a claim. Congress was not interested in how states choose as a matter of policy to spend their revenues. That's what the court needs to keep in mind. You look at the tax burdens. How much money do you have to pay the state to do the same thing? Trailer train and McNamara, the states were saying, well sure, this tax is targeted at the railroads, but we don't think railroads pay enough tax overall, so you have to look over here at some sort of gross receipts tax or something else on some other activity, and when you take all of that into account, maybe it comes out about right. I don't mean to be facetious, but that's what the arguments were. Lowman and Union Pacific didn't want to do that, very understandably, but they should have looked at the offsetting motor fuel tax. It's just another tax on the same activity. That's the key to the distinction. Targeting tax analysis doesn't work in an exemption-based claim analysis, and when we're dealing with exactly the same activity, there is no reason whatsoever not to look at the level of the tax burden, and the court does not look at how the state chooses to use its money. Earmarking, according to our experts' testimony, earmarking may have some political purpose and it may even have some accounting purpose, but it really doesn't have anything to do on how people behave. General assemblies, legislatures have the power to tax, and they do so, and they have the power to spend, and they do so, and how you label it really doesn't change their behavior. Thank you. Thank you. Thank you very much. The case shall be submitted, and when you're ready you can call the next case.